561 A.2d 477 (1989)
In the Matter of D.C.
No. 88-644.
District of Columbia Court of Appeals.
Argued May 24, 1989.
Decided July 18, 1989.
*478 Denise L. Wiktor, appointed by this court, for appellant S.C.
Beverly G. Stone, appointed by this court, was on the brief for appellee D.C.
Charles A. Moran, Washington, D.C., appointed by this court, for appellee C.B.
Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., filed a statement in lieu of brief for appellee District of Columbia.
Before ROGERS, Chief Judge, STEADMAN, Associate Judge, and PRYOR, Senior Judge.
PER CURIAM:
Appellant S.C. appeals from the finding that she neglected her thirteen-month-old baby, D.C., in violation of D.C.Code § 16-2301(9)(B) (1981). The mother contends that the government, in basing its case on the fact that she had left her baby with his brother, failed to introduce sufficient evidence that her neglect was not due to the lack of financial resources, and that the burden of proving lack of financial means was shifted to her in violation of due process under the Fifth Amendment. We affirm.

I
On April 10, 1987, S.C., the mother, left her home at approximately 8:30 a.m. to look for an apartment. She left her thirteen-month-old baby, D.C., in the care of his nine and one-half year old brother even though six months earlier the baby had suffered a blow to the eye while in his brother's custody. The mother returned home at approximately 4:30 p.m. and briefly went out to buy food, again leaving the baby in the care of his brother. Upon her return she noticed that D.C. had been burned on a space heater during her absence. The following morning, after the mother telephoned the baby's father and told him about the burns, the father took the baby to the hospital. The baby was diagnosed as suffering from first and second degree burns to his stomach, right thigh and large toe.
The father testified that the mother was receiving public assistance benefits for the child.
The trial judge issued written findings in which he found that S.C. had neglected D.C. because "leaving [the baby] with [the brother] was not appropriate under the circumstances of [the brother's] age and the prior incident while [the baby] was in [the brother's] custody." In his oral findings, incorporated into his written order, the judge also found that:
The absence of any testimony concerning [the mother's] financial situation, other than [the father's] reference to her being on public assistance, is not sufficient in my mind to conclude the Government has not carried its burden of proof. There certainly is nothing in the record to indicate that [the mother] could not afford a baby sitter when she went apartment shopping during the time [D.C.] got burned, nor is there any evidence that she could not have taken [D.C.] with her at the time she went apartment shopping. So I find that all the statutory requisites have been met and the Government has carried its burden of proof.

II
The mother contends on appeal that the government failed to meet its burden to prove by a preponderance of the evidence that the child's neglect was not "due to the lack of financial means" and that the burden of proof was shifted to her. D.C.Code §§ 16-2301(9)(B), 16-2317(c)(2) (1981); see In re J.S.R., 374 A.2d 860, 864 (D.C.1977).
*479 D.C.Code § 16-2301(9)(B) defines a neglected child as one who:
is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental or emotional health, and the deprivation is not due to the lack of financial means of his parent, guardian, or other custodian.
The mother contends that the statute must be interpreted to require the government to present evidence of financial ability as an element of proving neglect. She contends this burden remains with the government even when the facts underlying the neglect are unrelated to the financial circumstances of the parent.
We generally would agree that proof that the failure of proper care was not due to the parent's lack of financial means is a part of the government's burden of proof under § 16-2301(9)(B). United States v. Felder, 548 A.2d 57, 61 (D.C. 1988) (court reviews questions of law de novo); Washington Gas Light Co. v. Public Service Comm'n, 455 A.2d 384, 385-86 (D.C.1982) (meaning of statute is question of law). There may be instances, however, in which the neglect is completely unrelated to the financial status of the parent, as in the instant case, and it would seem perfectly proper for the government to meet its burden to prove lack of proper care and control without also providing an affirmative showing of the parent's financial status. The facts on which the judge relied in concluding that the child was without proper parental care and control were not based on a nexus between the act underlying the ultimate finding of neglect and the mother's financial circumstances. The judge found that there was no evidence that the mother could not have taken her baby with her while shopping. The mother does not dispute that her baby was without proper care and control or that the absence of such care resulted in his injury. In such circumstances, once the government has presented a prima facie case, the burden of production would shift to the parent to show that financial deprivation is related to the neglect. See Nader v. de Toledano, 408 A.2d 31, 48 (D.C.1979), cert. denied, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980).
In the instant case, however, the trial judge's findings included the element of financial ability and thus the issue before us is simply whether his finding was clearly erroneous. See D.C.Code § 17-305(a) (1981). The judge could properly find on the basis of direct as well as circumstantial evidence and reasonable inferences from the evidence that the government had met its burden of proof to show that the neglect was not due to financial inability. The father's testimony that the mother was receiving public assistance was undisputed. The mother admitted that her absences from home resulted when she was looking for an apartment and went to the store to buy food, activities which, in the absence of evidence to the contrary, suggest a present ability to pay. Indeed, the mother concedes that she presented no evidence that the assistance was inadequate or unavailable to cover babysitting costs had they been necessary. Therefore, her contention that there was a shift to her of the burden of proof on financial ability is meritless. See Nader, supra, 408 A.2d at 48; cf. Boyd v. United States, 473 A.2d 828, 834 & n. 6 (D.C.1984).
Accordingly, the judgment is
Affirmed.